Case 1:19-cv-00651-PLM-PJG   ECF No. 1 filed 08/15/19   PageID.1   Page 1 of 9

FILED - LN
August 15, 2019 10:48 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: dw /_____ SCANNED BY /____

## UNITED STATE DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

| | |
|---|---|
| LE CHEN,<br>387 Passaic Street, Apartment 10<br>Hackensack, New Jersey 07601<br>Telephone: (812) 606-4217<br>Email: chenle@msu.edu,<br><br>Plaintiff,<br><br>v.<br><br>LANSING POLICE DEPARTMENT,<br>121 West Michigan Avenue<br>Lansing, Michigan 48933<br>Telephone: (517) 483-4600,<br><br>JIMMY GARCIA,<br>Individual and official capacity<br>121 West Michigan Avenue<br>Lansing, Michigan 48933<br>Telephone: (517) 483-4600,<br><br>and<br><br>SAMUEL FEARNOW,<br>Individual and official capacity<br>121 West Michigan Avenue<br>Lansing, Michigan 48933<br>Telephone: (517) 483-4600,<br><br>Defendants. | **1:19-cv-651**<br>**Paul L. Maloney, United States District Judge**<br><br>Jury Request:   YES |

### Plaintiff's complaint for unlawful arrest, malicious prosecution, and negligence

1. On June 12, 2016, the defendants unlawfully arrested and maliciously prosecuted the plaintiff without probable cause in the City of Lansing, Michigan. The plaintiff seeks a declaration that this arrest constituted unlawful seizure and violated the Fourth Amendment to the United States Constitution, an order requiring the defendants to publicly apologize to the plaintiff, and the assessment of appropriate damages including compensatory damages and punitive damages.

### Jurisdiction and venue

2. This Court has jurisdiction over the unlawful arrest and malicious prosecution claims of this suit pursuant to 42 U.S.C. § 1983 as an action alleging the "deprivation of any rights, privileges, or immunities" secured by the Fourth Amendment to the United States Constitution.

3. The defendant Lansing Police Department acted under color of state or local law because it was and is a governmental department of the City of Lansing, Michigan, exercising power "possessed by virtue of state law."

4. The defendants Jimmy Garcia and Samuel Fearnow acted under color of state or local law because they were and are employed by the Lansing Police Department and were performing a governmental function when depriving the plaintiff of civil rights.

5. This Court has supplemental jurisdiction over the negligence claim of this suit pursuant to 28 U.S.C. § 1367 because it forms part of the same case or controversy over which this Court has original jurisdiction.

6. A substantial part of the acts or omissions giving rise to this suit occurred in this district and venue is properly found in the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1391(b).

### Parties

7. The plaintiff Le Chen ("Chen") is a resident of Bergen County, New Jersey, and previously resided in Ingham County, Michigan when the the defendants' unlawful acts or omissions giving rise to this suit occurred.

8. The defendant Lansing Police Department ("Police Department" or "LPD") was and is a government department of the City of Lansing, Michigan.

9. The defendant Jimmy Garcia ("Garcia") was and is a police officer employed by the Lansing Police Department.

10. The defendant Samuel Fearnow ("Fearnow") was and is a police officer employed by the Lansing Police Department.

### Relevant constitutional and statutory provisions

11. The Fourth Amendment to the United States Constitution ("Fourth Amendment") provides that "[t]he right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

12. 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

## Factual background

13. From 2011 to 2016, the plaintiff was physically, emotionally, verbally, financially, and sexually abused by his husband Donald Elton Bierer, III ("Bierer").

14. Bierer moved into the plaintiff's house in the summer of 2013. He was unemployed until June 2016. Bierer drank at least four cans of 24-ounce 211 Steel Reserve Beer. He was drunk every night to a point where he could not remember what he said or did at night when he woke up in the afternoon the next day.

15. In the evening of June 11, 2016, Bierer got drunk as usual. He became aggressive again, and started to attack the plaintiff verbally and emotionally.

16. On June 12, 2016, at or around 12:41 am, the plaintiff called 911 for help. Three police officers responded to the plaintiff's house, but left without taking any protective actions at or around 1:00 am.

17. After the police officers left, Bierer continued attacking the plaintiff verbally and said, "now everybody knows you are insane." When the plaintiff asked, "how," Bierer

laughed and said, "you kept talking. You were crazy. I only talked to the police for two minutes, but they talked to you for 20 minutes." The plaintiff said, "I only told the truth, didn't I?" Bierer said, "apparently, you were making a point. I cannot believe you are such a person".

18. The plaintiff suggested that it was time to talk about custody of their pet cat Simon. The plaintiff suggested Simon spends half of his time with the plaintiff and the other half with Bierer. Bierer disagreed, saying that "this is his house and he feels safe here. I don't think he wants to move." Obviously, Bierer assumed, as usual, that he owned the house the plaintiff's parents bought for him because Bierer's name was and is on the deed. The plaintiff asked, "have you ever been financially responsible for Simon?" After moments of silence, Bierer said, "no, it is unfair." Bierer always thought he was treated unfairly by people. The plaintiff said, "you got to pick one, the house or Simon, but you cannot get both". Bierer said, "you don't have the authority to say that," and "if you want Simon, you need to fight". The plaintiff said, "for Simon, I will. But do you really want to go through legal proceedings, like your mom's divorce, for years?" Bierer did not say anything, but started to read something on his iPhone. As the plaintiff walked behind Bierer's chair many times, Bierer was reading some professional writings on the topics of prosecution and family law. Maybe 10 minutes later, Bierer went to the kitchen then walked through the dinning room towards the stairs. As Bierer walked by, he said to the plaintiff, "if you want Simon, you need to go to court" and went upstairs to his bedroom. The plaintiff remained on the first floor to finish up packing.

19. Shortly after, Garcia and Fearnow arrived at the plaintiff's house. Garcia shined a flashlight directly on the plaintiff's face and asked the plaintiff to get out to the front porch. After the plaintiff got out to the front porch, Garcia asked Bierer to come down. At the front porch, Fearnow asked the plaintiff "what happened." The plaintiff was confused but thought maybe the 911 dispatcher sent them to his house by mistake, so he honestly told Fearnow that, he called the police for help, but three police offices came and felt. Fearnow kept asking the same questions two or three more times and the plaintiff offered the same answer. The plaintiff was then asked a few times "what happened after." The plaintiff said he told Bierer he wanted to divorce and they talked about custody of Simon. The plaintiff also said the last thing he heard from Bierer as he walked upstairs was that "you need to go to court." Fearnow asked, "did anybody hurt anybody? Was there any physical contact?" The plaintiff answered, "no". The plaintiff told Fearnow that Bierer read something on his iPhone and went upstairs

as they saw he just came down. The plaintiff was packing in the living room on the first floor, which they should have seen if they paid attention as they walked into the front porch. Still confused with whether this was a mistaken response to the plaintiff's single phone call to 911, the plaintiff asked, "how many 911 phone calls did you receive?" The plaintiff was told Bierer called the second time. At the same time, the plaintiff also heard Garcia asked Bierer where his injury was. It was not until then the plaintiff realized Bierer had made a false police report and this was his malicious accusation for retaliation and for purposes of getting both Simon and the plaintiff's house by ousting him from his own house. Particularly the plaintiff realized what Bierer meant when he told the plaintiff "you need to go to court."

20. It was at that moment, Garcia turned around and said, "you are arrested." The plaintiff was shocked and only said, "are you serious?" Garcia, "yes." The plaintiff was taken into the Lansing Police Department.

21. The plaintiff was locked in prison until he met with a magistrate judge at or around 10:00 am in the morning, during which time, he was taken to take a DNA sample. It was not until then the plaintiff heard that he was arrested for felonious battery and assault with a "deadly weapon". However, no one was able to to tell him what the weapon was.

22. After the arraignment, the plaintiff was sent to a big jail cell to wait for someone to make the bond payment. A female officer came and asked the plaintiff to follow her. She said someone wanted to talk to the plaintiff. The plaintiff met and spoke with a social worker from End Violent Encounters ("EVE"), an organization that provided support for domestic violence victims. This was the first time ever the plaintiff opened himself up and told his stories with Bierer throughout the years. The plaintiff started to cry and the conversation had to stop a few times. The social worker went to get the plaintiff some tissue papers. At the end, she told the plaintiff she would leave the contact information of the EVE at the police for him and asked the plaintiff to contact them for help immediately after he was released.

23. The plaintiff had two pre-trial conferences on June 27, 2016 and July 11, 2016. A jury-trial was set for August 16, 2016. The case was dismissed on August 16, 2016 due to lack of evidence.

24. In the afternoon of August 16, 2016, the plaintiff tried to go back to his own house, only to find that Bierer had changed the lock.

25. Because the plaintiff was abused, he suffered depression and obsessive and compulsive disorder ("OCD"). After the June 12, 2016 unlawful arrest and malicious prosecution, his depression and OCD got worse and he additionally developed post traumatic stress disorder ("PTSD"). The plaintiff was not able to get medical or mental help because when he was ousted from his own house, he maxed out all his credit cards to support Bierer and himself. In or around April 2018, the plaintiff paid off his credit card debts, and started treatment at Care Plus New Jersey until today.

### First cause of action - unlawful arrest

26. Paragraphs 15 through 20, inclusive, are incorporated herein by reference.

27. The plaintiff was arrested unlawfully by the Lansing Police Department, through Garcia and Fearnow, because there was no probable cause. Garcia and Fearnow clearly acted wantonly and failed to consider the whole circumstances in the eyes of a reasonable person.

### Second cause of action - malicious prosecution

28. Paragraphs 15 through 20, inclusive, are incorporated herein by reference.

29. The plaintiff was maliciously prosecuted. The Lansing Police Department, through Garcia and Fearnow, mishandled evidence and presented the case to the prosecutor's office for prosecution even though there was no probable cause.

### Third cause of action - negligence

30. Paragraphs 15 through 20, inclusive, are incorporated herein by reference.

31. The Lansing Police Department had a duty of care to take necessary protective actions when the plaintiff called 911 for help, but has breached this duty. Because of the breach of duty, the Lansing Police Department caused physical damage to the plaintiff as he was later maliciously accused by Bierer and unlawfully arrested and prosecuted by the Lasing Police Department, through Garcia and Fearnow.

### Prayer for relief

32. WHEREFORE, the plaintiff prays that this Court:

33. Declare that the defendants the Lansing Police Department, Jimmy Garcia, and Samuel Fearnow arrested and prosecuted the plaintiff without probable cause and violated the Fourth Amendment to the United States Constitution;

34. Order the defendants the Lansing Police Department, Jimmy Garcia, and Samuel Fearnow to publicly apologize to the plaintiff;

35. Assess an appropriate damages including compensatory damages and punitive damages against each of the defendants;

36. Award the plaintiff his costs in this actions; and

37. Grant the plaintiff such other relief as may be appropriate.

**Certification and closing**

38. Under Federal Rule of Civil Procedure 11, by signing below, the plaintiff certifies to the best of his knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argement for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

August 8, 2019

Respectfully submitted,

Le Chen, Pro Se Plaintiff
387 Passaic Street, Apartment 10
Hackensack, New Jersey 07601
Telephone: (812) 606-4217
Email: chenle@msu.edu

| | | AMOUNT |
|---|---|---|
| 1007 | 48933 | **$25.50** R2304M115303-55 |

EE 481 051 187 US

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No. | Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| ☒ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |
|---|---|---|---|
| PO ZIP Code 07607 | Scheduled Delivery Date (MM/DD/YY) 8/14/19 | Postage $ 25.50 | |
| Date Accepted (MM/DD/YY) 8/13/19 | Scheduled Delivery Time ☐ 10:30 AM ☐ 3:00 PM ☒ 12 NOON | Insurance Fee $ | COD Fee $ |
| Time Accepted 3:15 ☐AM ☒PM | 10:30 AM Delivery Fee $ | Return Receipt Fee $ | Live Animal Transportation Fee $ |
| Special Handling/Fragile $ | Sunday/Holiday Premium Fee $ | Total Postage & Fees $ 25.50 | |
| Weight lbs. ozs. | ☒ Flat Rate | Acceptance Employee Initials TB | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time ☐AM ☐PM | Employee Signature |
|---|---|---|
| Delivery Attempt (MM/DD/YY) | Time ☐AM ☐PM | Employee Signature |

LABEL 11-B, JULY 2018   PSN 7690-02-000-9996

**UNITED STATES POSTAL SERVICE**®



## PRIORITY
### ★ MAIL ★
## EXPRESS™

OUR FASTEST SERVICE IN THE U.S.



This envelope is made from post-consumer waste. Please recycle - again.

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

≡EMS≡

EP13F July 2013   OD: 12.5 x 9.5



PS10001000006

**UNITED STATES POSTAL SERVICE®**  | PRIO
                                     | M A
                                     | EXPR

**CUSTOMER USE ONLY**
FROM: (PLEASE PRINT)          PHONE 812-606-4

LE CHEN
387 Passaic St. Apt. 10
Hackensack, NJ 07601

**DELIVERY OPTIONS (Customer Use Only)**
☒ SIGNATURE REQUIRED *Note:* The mailer must check the "Signature Required"
Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases
Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the it
mail receptacle or other secure location without attempting to obtain the addressee's signature
**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)            PHONE 517-377-

U.S. District Court West
113 Federal Building
315 W. Allegan St., La
ZIP + 4® (U.S. ADDRESSES ONLY)

4 8 9 3 3 -

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-
■ $100.00 insurance included.

⬅ PEEL FROM THIS CORNER

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE