UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LE CHEN,

        Plaintiff,                                  Hon. Paul L. Maloney

v.                                                  Case No. 1:19-cv-651

CITY OF LANSING, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Dismiss. (ECF No. 37). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted and this matter terminated.

## BACKGROUND

In his Second Amended Complaint, Plaintiff alleges the following. (ECF No. 31). In the summer of 2013, Donald Bierer began living with Plaintiff. (*Id.*, PageID.253). On the evening of June 11, 2016, Bierer "got drunk as usual," after which he began to "attack Plaintiff verbally and emotionally." (*Id.*). At approximately midnight, Plaintiff "called 9-1-1 for help." (*Id.*). Three police officers responded to Plaintiff's call, but departed soon thereafter "without taking any protective actions." (*Id.*). After the police officers departed, Bierer "continued attacking Plaintiff verbally." (*Id.*). In response, Plaintiff indicated to Bierer that the pair needed to determine custody

-1-

arrangements for their cat because Plaintiff intended to "divorce" Bierer. (*Id.,* PageID.253-54). The pair were unable to resolve this matter and the discussion ended with Bierer telling Plaintiff, "if you want [the cat], you need to go to court." (*Id.*).

Approximately, one hour later, Officers Garcia and Fearnow arrived at Plaintiff's residence. (*Id.,* PageID.254). Officer Fearnow asked Plaintiff, "did anybody hurt anybody?" and "was there any physical contact?" to which Plaintiff answered, "no." (*Id.*). Bierer, however, reported to Officer Garcia that Plaintiff "cut him" with a "piece of plastic." (*Id.*, PageID.258). After Officers Garcia and Fearnow spoke with Plaintiff and Bierer, Plaintiff was arrested for "felonious battery and assault with a deadly weapon."[1] (*Id.*, PageID.254). Plaintiff was released on bond later that day. The charges against Plaintiff were eventually dismissed "due to lack of evidence." (*Id.,* PageID.255).

Plaintiff initiated the present action against Officers Garcia and Fearnow, as well as the City of Lansing and the Lansing Police Department. Plaintiff asserts the following causes of action: (1) unlawful arrest; (2) malicious prosecution; (3) unlawful seizure; (4) fabrication of evidence; and (5) denial of equal protection. Defendants now move to dismiss Plaintiff's complaint. Plaintiff has responded to the motion.

---

[1] The Court surmises that Plaintiff intended to convey that he was charged with assault and battery and/or felonious assault.

## **LEGAL STANDARD**

Defendants seek judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The standard applicable to a motion asserted under Rule 12(c), is the same as that for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See, e.g., Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 389 (6th Cir. 2007).

A claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The Court need not accept as true, however, factual allegations which are "clearly irrational or wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

As the Supreme Court has held, to avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

The burden to obtain relief under Rule 12(b)(6), however, rests with the defendant. *See, e.g., DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." A motion to dismiss "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Ibid.*

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*,

*Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits . . . in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

## ANALYSIS

### I. Unlawful Arrest

#### A. Failure to State a Claim

Plaintiff alleges that his arrest by Defendants Garcia and Fearnow was unlawful due to a lack of probable cause. The Fourth Amendment to the United States Constitution provides, in part, that citizens may not be subjected to unreasonable searches or seizures. A warrantless arrest is reasonable "where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

To prevail on his wrongful arrest claim, Plaintiff need not demonstrate that he did not commit a crime, only that Defendants lacked probable cause to arrest him. *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009). Probable cause exists "if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Ibid.*; *see also*, *Devenpeck*, 543 U.S. at 152 (whether probable cause

exists "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest").

To convict Plaintiff of assault and battery, the prosecution would have had to establish that Plaintiff "intended either to injure or to put the victim in reasonable fear or apprehension of an immediate battery." *People v. Whittie*, 1999 WL 33453899 at \*6 (Mich. Ct. App., Feb. 26, 1999). To convict Plaintiff of felonious assault, the prosecution would have had to demonstrate that Plaintiff committed an assault with a "dangerous weapon." *Ibid.*

As discussed above, Plaintiff alleges that Bierer reported to Defendant Garcia that Plaintiff "cut him" with a "piece of plastic." While this allegation may, by itself, suggest that there existed probable cause to arrest Plaintiff, such must be considered in light of other allegations in Plaintiff's complaint. For example, Plaintiff alleges that Bierer "refused to show Garcia the piece of plastic that he falsely alleged Plaintiff used to cut him, and refused to allow Garcia to enter the house to take pictures of it." (ECF No. 31, PageID.258). Plaintiff also alleges that Defendant Garcia stated in his police report that Bierer was unable to describe "how" Plaintiff cut him. (*Id.*). Finally, Plaintiff makes no allegations that support the conclusion that Bierer was, in fact, cut or otherwise injured.

This is a close call, but simply put, the allegations in Plaintiff's complaint, interpreted in Plaintiff's favor, support the conclusion that Bierer's allegation of assault was unsubstantiated by any direct or circumstantial evidence. Thus, a reasonable juror could conclude that a prudent police officer in Defendants' position could not have

reasonably believed that Plaintiff committed assault and battery or felonious assault and that, therefore, probable cause to arrest Plaintiff simply did not exist. Accordingly, the Court is not persuaded that Plaintiff's allegations regarding his unlawful arrest claim fail to state a claim on which relief may be granted.

B.   Statute of Limitations

Defendants argue, in the alternative, that Plaintiff's unlawful arrest claim must be dismissed because Plaintiff initiated the present action after the expiration of the statute of limitations. The Court agrees.

When determining the limitations period applicable in a Section 1983 action, courts must borrow the statue of limitations that governs personal injury actions in the state in which the Section 1983 action was initiated. *See Owens v. Okure*, 488 U.S. 235, 239-41 (1989); *Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009). Where the relevant state law provides multiple statutes of limitation for personal injury actions, courts are to apply the "general or residual statute for personal injury actions." *Okure*, 488 U.S. at 249-50; *Bonner*, 564 F.3d at 430. Michigan law articulates multiple statutes of limitation applicable to personal injury actions. *See* Mich. Comp. Laws § 600.5805. Accordingly, the limitations period applicable in the present action is three years, as articulated in Mich. Comp. Laws § 600.5805(10). *See Hardin v. Straub*, 490 U.S. 536,

540 (1989); *Jones v. City of Hamtramck*, 905 F.2d 908, 909 (6th Cir. 1990); *Jones v. City of Allen Park*, 167 Fed. Appx. 398, 407 (6th Cir., Jan. 3, 2006).[2]

While the Court looks to state law to identify the applicable statute of limitations, federal law must be applied when determining when the relevant limitations period begins to run. *See Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003); *Hebron v. Shelby County Government*, 406 Fed. Appx. 28, 30 (6th Cir., Dec. 22, 2010). Federal law recognizes two related, but nevertheless distinct, rules for determining when a claim accrues, thus beginning the relevant limitations period.

Under the "standard" rule, the statute of limitations begins to run "when the plaintiff has a complete and present cause of action that can be raised in court." *Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1162 (6th Cir. 2021) (quoting *Rotkiske v. Klemm*, 140 S.Ct. 355, 360 (2019)). Pursuant to the "discovery" rule, a claim accrues when the plaintiff knows, or should have known, he possessed a cause of action. *Dibrell*, 984 F.3d at 1162 (citing *Rotkiske*, 140 S.Ct. at 360-61. The Court need not resolve which of these two rules takes applies presently, because in the context of a claim for unlawful arrest, the result is the same under both rules. Plaintiff alleges that he was unlawfully arrested on June 12, 2016, and arraigned later the same day after which he was released on bond. Thus, Plaintiff's claim for unlawful arrest accrued on June 12, 2016, a fact of which Plaintiff knew or should have known. *See Dibrell*, 984 F.3d at 1162. Accordingly,

---

[2] The *Hardin* and *City of Hamtramck* courts identified the relevant provision as Mich. Comp. Laws § 600.5805(8). This particular provision is presently codified at Mich. Comp. Laws § 600.5805(2).

Plaintiff's action, initiated on August 15, 2019, is untimely absent a tolling of the limitations period. In response to the present motion, Plaintiff does not argue that he is entitled to a tolling of the limitations period. Instead, Plaintiff argues that his unlawful arrest claim did not accrue until May 2018. The Court is not persuaded.

Plaintiff argues that on April 13, 2018, he filed a complaint with the Lansing Police Department against Defendant Garcia presumably for his actions described herein. In a letter dated May 9, 2018, Plaintiff's complaint was rejected on the ground that Garcia acted "within established policies and procedures." Plaintiff argues that it was not until he received this letter that he knew, or had reason, to know that he could pursue a claim for unlawful arrest. As previously noted, the relevant inquiry in an unlawful arrest claim is not whether the defendant complied with police procedures, but instead whether the arrest in question was accomplished in the absence of probable cause. As discussed above, Plaintiff's cause of action for unlawful arrest accrued on June 12, 2016. Plaintiff's claim for unlawful arrest, filed more than three years later, is, therefore, untimely. Accordingly, the undersigned recommends that as to Plaintiff's claim for unlawful arrest, Defendants' motion to dismiss be granted.

## II. Malicious Prosecution

To prevail on his malicious prosecution claim, Plaintiff must establish the following elements: (1) a criminal prosecution was initiated against Plaintiff and Defendants made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, Plaintiff

-9-

suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in Plaintiff's favor. *See Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015).

Even assuming Plaintiff's allegations satisfy the latter three elements, Plaintiff's claim fails because his allegations fail to satisfy the first element. To satisfy this first element, not only must Plaintiff allege that Defendants made, influenced, or participated in the decision to prosecute, he must further allege that Defendants acted with "some kind of blameworthiness, something beyond mere negligence or innocent mistake." *Id.* at 655 ("even false testimony is not actionable as malicious prosecution unless deliberate – i.e., given with knowledge of, or reckless disregard for, its falsity").

Plaintiff was prosecuted by the Ingham County Prosecutor's Office, which is not a party in this action. Plaintiff does not allege that any Defendant was involved in the decision to prosecute him. Instead, Plaintiff merely alleges that following his arrest, Defendants turned the matter over to the Ingham County Prosecutor's Office who made the determination to prosecute. Based upon Plaintiff's allegations, the only potential relationship between Defendants and the decision to prosecute is the police report authored by Defendant Garcia. This is insufficient, however, for two reasons. First, where a police officer completes a report, but otherwise is uninvolved in the decision to prosecute, such is insufficient to maintain a malicious prosecution claim against the police officer. *See, e.g., Richards v. County of Washtenaw*, 818 Fed. Appx. 487, 493 (6th Cir., June 24, 2020). Second, even if the mere completion of a police report constituted

participation in the decision to prosecute, Plaintiff has not alleged that the individuals who made the decision to prosecute considered or relied upon Defendant Garcia's police report. In sum, Plaintiff's allegations, even interpreted in a light most favorable to Plaintiff, simply fail to satisfy the first element of his malicious prosecution claim.

### III. Unlawful Seizure

Following his release on bond, on June 12, 2016, through August 16, 2016, the date on which the charges against him were dismissed, Plaintiff alleges that he had to travel to Michigan to attend two pre-trial conferences. Plaintiff also alleges that his release on bond subjected him to unspecified "onerous" restrictions. Plaintiff alleges that as a result, he suffered an unlawful seizure.

In support of their request for relief, Defendants cite to no authority, but instead simply argue that "[a]ttendance at court hearings is the obvious and natural consequence of being prosecuted for a criminal offense." That may be the case, but it does not necessarily follow therefrom that Plaintiff has failed to state a claim, especially considering that, as discussed above, Plaintiff's allegations are sufficient to defeat Defendants' argument that there existed probable cause to arrest Plaintiff.

Rather, it appears to be an open question whether a criminal defendant on pre-trial release is "seized" for purposes of the Fourth Amendment. In *Albright v. Oliver*, 510 U.S. 266 (1994), Justice Ginsburg, in a concurring opinion, noted that, a person facing "serious criminal charges is hardly freed from the state's control upon his release from a police officer's physical grip" as he is, among other things, "required to appear in court at

the state's command." *Id.* at 278. Justice Ginsburg further observed that, "the difference between pretrial incarceration and other ways to secure a defendant's court attendance is a distinction between methods of retaining control over a defendant's person, not one between seizure and its opposite." *Ibid.*

Relying, at least in part, on these observations, several courts have articulated what is referred to as the "continuing seizure" doctrine to recognize the viability of claims that the terms or conditions of pretrial release implicate the Fourth Amendment. *See, e.g., Cummin v. North*, 731 Fed. Appx. 465, 470-73 (6th Cir., Apr. 26, 2018); *Rapp v. Putman*, 644 Fed. Appx. 621, 627-28 (6th Cir., Mar. 29, 2016). However, neither the Sixth Circuit nor the Supreme Court has recognized the continuing seizure doctrine. *See Cummin*, 731 Fed. Appx. at 471; *Rapp*, 644 Fed. Appx. at 628. Thus, an individual defendant would be entitled to qualified immunity with respect to such a claim.[3] *See Cummin*, 731 Fed. Appx. at 470-73; *Rapp*, 644 Fed. Appx. at 627-28.

The fact that a defendant would be entitled to qualified immunity with respect to a claim such as this does not necessarily mean, however, that the claim is not viable. Stated differently, concluding that qualified immunity is appropriate because the jurisdiction has not yet recognized a particular claim is distinct from a conclusion that the jurisdiction rejects such a claim. The Sixth Circuit has articulated the former, but

---

[3] Neither Defendant Garcia nor Defendant Fearnow have asserted a qualified immunity defense in the present motion.

not the latter. Accordingly, the Court simply cannot conclude that Plaintiff's allegations fail to state a claim.

Defendants are nevertheless entitled to the dismissal of this claim for a more fundamental reason. Even if the Court assumes that Plaintiff's claim that the conditions of his pre-trial release implicate the Fourth Amendment and state a claim, Plaintiff has alleged no facts that the present Defendants were responsible for the imposition of such conditions. None of the present Defendants prosecuted Plaintiff or imposed the conditions applicable to his pre-trial release. Thus, as to the present Defendants, Plaintiff has failed to allege facts which state a claim on which relief may be granted.

## IV. Fabrication of Evidence

Plaintiff alleges that his rights were violated "because of fabrication of evidence" by Defendants. Specifically, Plaintiff alleges that "Defendants stated a deliberate falsehood or showed reckless disregard for the truth and that the allegedly false or omitted information was material to the finding of probable cause."

To plausibly allege fabrication of evidence, Plaintiff must allege that Defendants "knowingly manufacture[d] probable cause, thereby effecting a seizure." *See Hoskins v. Knox County, Kentucky*, 2018 WL 1352163 at *10 (E.D. Ky., Mar. 15, 2018). While Plaintiff asserts the conclusion that Defendants "stated a deliberate falsehood [which] was material to the finding of probable cause," Plaintiff fails to allege what falsehoods Defendants allegedly made. As noted above, Plaintiff's theory is that it was Bierer who falsely reported that he was assaulted by Plaintiff and that such was the basis for his

-13-

arrest. That Defendants may have improperly credited Bierer's allegations does not equate with Defendants "manufacturing" probable cause. Accordingly, Plaintiff's allegations fail to state a claim.

## V. Equal Protection

Plaintiff alleges that while he was arrested based upon Bierer's false and unsubstantiated allegations, "Defendants have repeatedly refused to investigate" his allegations of domestic violence against Bierer. Plaintiff alleges that the disparity in this conduct violates his right to the equal protection of the laws.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal protection claim, Plaintiff "must adequately plead that the government treated [him] 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). Courts also recognized what is referred to as a "class-of-one" equal protection claims in which the plaintiff does not allege membership in a particular class or group, but instead alleges that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Davis v. Prison Health Services*, 679 F.3d 433, 441 (6th Cir. 2012).

With respect to this claim, however, the only factual allegations Plaintiff advances are against the Ingham County Prosecutor's Office and a Lansing Police Department Detective neither of whom are defendants in this matter. (ECF No. 31, PageID.256-57). With respect to the defendants in this action, Plaintiff makes no allegations regarding his equal protection claim. Instead, Plaintiff just asserts the conclusion that Defendants violated his rights. Such is insufficient, however, to state a claim.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion to Dismiss (ECF No. 37) be granted and this matter terminated. For the same reasons the undersigned makes these recommendations, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).                Respectfully submitted,

Date: March 4, 2021            /s/ Phillip J. Green
                   PHILLIP J. GREEN
                   United States Magistrate Judge